1  UNITED STATES BANKRUPTCY COURT

2  EASTERN DISTRICT OF NEW YORK

3  Case No. 23-42634-nhl

4  - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  PETER JULIAN DEPAOLA,

8

9            Debtor.

10 - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                 United States Bankruptcy Court

12                 271-C Cadman Plaza East

13                 Brooklyn, NY 11201

14

15                 February 6, 2024

16                 2:26 p.m.

17

18

19

20

21 B E F O R E :

22 HON. NANCY HERSHEY LORD

23 U.S. BANKRUPTCY JUDGE

24

25 ECRO:  UNKNOWN

1    HEARING re [36] Omnibus Motion for 2004 Examination Filed by

2    Michael T Conway on behalf of Thea Francesca DAdamo

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Rita Weltsch

1    A P P E A R A N C E S :

2

3    LAW OFFICES OF WENARSKY AND GOLDSTEIN, LLC

4         Attorney for Debtor-in-Possession, Peter Julian DePaola

5         280 West Main Street

6         Denville, NJ 07834

7

8    BY:  SCOTT J. GOLDSTEIN

9

10   DEPARTMENT OF JUSTICE/U.S. TRUSTEE

11        Attorney for U.S. Trustee

12        Office of the United States Trustee

13        Region 2

14        United States Federal Building

15        New York, NY 10014

16

17   BY:  JEREMY S. SUSSMAN

18

19   LAZARE POTTER GIACOVAS & MOYLE LLP

20        Attorneys for Creditor, Thea Francesca DAdamo

21        747 Third Avenue, 16th Floor

22        New York, NY 10017

23

24   BY:  MICHAEL T. CONWAY

25        ANNA PIA FELIX

1   WINGET, SPADAFORA & SCHWARTZBERG, LLP

2          Attorneys for Third Party PTR, Inc.

3          1528 Walnut Street, Suite 1502

4          Philadelphia, PA 19102

5

6   BY:  DENIS DICE

7          DOUGLAS FOGLE

8

9   KELLER ROHRBACK LLP

10         Attorneys for Creditor Bryan Jaeger

11         3101 North Central Avenue, Suite 1400

12         Phoenix, AZ 85012

13

14  BY:  CHRIS GRAVER

15

16  ALSO PRESENT:

17  LAURA K. SMOKE

18  RON KILGARD

19  GARY A. GOTTO

20

21

22

23

24

25

1             P R O C E E D I N G S

2             CLERK:  The next matter on the calendar in the

3    case of Peter Julian DePaola.

4             THE COURT:  Appearances, please.

5             MR. GOLDSTEIN:  Good afternoon, Your Honor.  Scott

6    Goldstein appearing on behalf of the Debtor-in-Possession,

7    Peter Julian DePaola.

8             MR. SUSSMAN:  Good afternoon, Your Honor.  Jeremy

9    Sussman on behalf of the United States Trustee.

10            MR. CONWAY:  Hello, Mr. Sussman.  Good afternoon,

11   Your Honor.  Michael Conway, I am appearing on behalf of

12   Thea D'Adamo, the moving party, and with me is my partner,

13   Anna Pia Felix.

14            MR. DICE:  Good afternoon, Your Honor.  Denis Dice

15   representing PTR, which is a proposed 2004 witness.  And

16   with me is my partner, or my associate, Doug Fogle.

17            MR. GRAVER:  And good afternoon, Your Honor, Chris

18   Graver with Keller Rohrback appearing on behalf of Bryan

19   Jaeger.

20            THE COURT:  Okay.  The questions is whether I have

21   time for you right now.  Usually when we have things that

22   are contested, we take a lot of argument.  They don't get

23   put on -- they don't stay on the Chapter 11 calendar for

24   obvious reasons.

25            There's a hearing on creditor Thea Francesca

1   D'Adamo's Contested Omnibus Motion for 2004 Exam Pursuant to

2   Federal Bankruptcy Procedure 2004.  Service was timely and

3   proper.  Last Friday PTR, Inc., one of the parties who

4   movant seeks to examine filed an objection to the objection

5   to the motion.  On February 5th, 2024, Debtor filed a letter

6   of no objection to the motion.  Okay, let me go through and

7   divide this up.

8           Movant is Debtor's -- movant is Debtor's sister

9   and former member of Debtor's trading firm DePaola Trading.

10  Movant has filed proof of claim for $1,884,572.50.  Movant

11  seeks an order pursuant to Rule 2004 directing the witness

12  Mr. DePaola to appear for examination and to produce

13  documents related to Debtor's former business

14  (indiscernible) include a proposed (indiscernible) of

15  exhibits.

16          Movant states that Debtor was "one of the most

17  successful option brokers on Wallstreet," and was the sole

18  owner of DePaola Trading, Inc., a brokerage firm on the AMEX

19  New York Stock Exchange floor.  Bear with me a second.

20  Hange on a second.  Okay.

21          The motion to dismiss or convert has been

22  adjourned to March 19th, Mr. Sussman?

23          MR. SUSSMAN:  Um --

24          THE COURT:  I had other matters on today.  I had

25  status, the motion to dismiss, the motion to extend

1     inclusivity.  I had three matters on today, which are now

2     stricken.  This is left and I'm just kind of not quite sure

3     why everything else is adjourned and why this is left.  I

4     mean I -- if somebody will help me out here with this but --

5              MR. GOLDSTEIN:  If I may, Your Honor, Scott

6     Goldstein for the Debtor.

7              THE COURT:  Yeah.

8              MR. GOLDSTEIN:  Your Honor, the other matters were

9     adjourned at my request.  I was not actually (indiscernible)

10    I would have internet connection to get in today.  My office

11    just moved yesterday.  The blur is because I don't want

12    anyone to see how bad it looks in here at this time.  But

13    the Office of the U.S. Trustee was kind enough to agree to

14    adjourn everything as the motion to extend time is my

15    motion.  So, we adjourned everything except for this, which

16    is Mr. Conway's, and he indicated that he wanted to proceed.

17             THE COURT:  Well, Mr. Sussman, if you know -- I

18    mean, whatever -- I'm not getting to it now, but if you know

19    what the grounds for your -- grounds for the motion, have

20    they been cured?

21             MR. GOLDSTEIN:  Your Honor, if I may?

22             THE COURT:  No, Mr. -- no, let me -- I'm asking

23    Mr. Sussman, the movant.

24             MR. GOLDSTEIN:  Okay.

25             MR. SUSSMAN:  Your Honor, I'm -- to be honest, I'm

1   not the lead attorney for this case, I'm not quite sure what

2   is going on.  I think there was a request to adjourn that we

3   consented to, but it wasn't agreed to by all parties.

4           THE COURT:  All right.  Mr. Goldstein, give it a

5   try.

6           MR. GOLDSTEIN:  Very quickly.  The Debtor -- there

7   are three grounds on the U.S. Trustee's motion to dismiss.

8   One was -- one was U.S. Trustee fees; those have been paid

9   up to date.  Another was lack of insurance proof.  We

10  provided that to the Office of U.S. Trustee.  We filed one

11  operating report, and the others are in process right now.

12  So, we are making progress on that.

13          THE COURT:  All right.

14          MR. GOLDSTEIN:  Requested (indiscernible) to

15  adjourn and she consented.

16          THE COURT:  Okay.  All right, let me continue.

17  Movant states the Debtor, "was one of the most successful

18  options brokers on Wallstreet," was the sole owner of

19  DePaola Trading, Inc, a brokerage firm on the AMEX New York

20  Stock Exchange floor.  Debtor had a large broker business,

21  (indiscernible) operating.

22          Movant begins by raising that despite earning,

23  "tens of millions of dollars," and paying for a $6 million

24  home in full, the Debtor has claimed he only has one bank

25  account holding $40,000 and that he has not been paid since

1    the petition date by his employer, meaning no income in

2    2023.

3            Movant asserts on information and belief Debtor

4    has improperly transferred and/or (indiscernible) assets

5    from the Court and its creditors.  Movant states the

6    Debtor's entire team of brokers is now employed by PTR,

7    Inc., a different options trading firm, asserting that the

8    brokers still use the same office space paid for by the

9    Debtor, service the same book of business, and yet Debtor

10   says he has no right to receive a share of the new revenue

11   and is content to simply allow these millions of dollars in

12   revenue to be retained by PTR.

13           Debtor's firm specialized in executing orders of

14   options, securities traded on the AMEX New York Stock

15   Exchange from 2003 until ceasing business operations in 2023

16   which the movant states was voluntary on the part of the

17   Debtor.  Movant alleges that throughout that time Debtor

18   paid himself "millions of dollars."

19           All right, all right.  So, this is easy-peasy with

20   respect to the Debtor.  Right?  You're seeking to examine

21   the Debtor, correct?

22           MR. CONWAY:  Your Honor, Michael Conway for Ms.

23   D'Adamo.  Yes, we've actually asked for subpoenas to be

24   issued with respect to 10 parties, nine of which --

25           THE COURT:  But what -- I'm asking you about the

1    Debtor?

2              MR. CONWAY:  The Debtor --

3              THE COURT:  Okay.

4              MR. CONWAY:  The Debtor --

5              THE COURT:  The Debtor is easy -- the Debtor is

6    easy-peasy.

7              MR. CONWAY:  Yeah, it --

8              THE COURT:  The Debtor is granted.  Okay?  Now,

9    let's see what else because I have opposition, which again

10   may not be something that I can just handle in a few

11   minutes.  So, bear with me.  Okay.  This is all about the

12   Debtor.  Okay, now we get to this.  Okay.

13             So, your client went to arbitration, correct?  And

14   which resulted in a final award in December of 2022.  Your

15   motion said 2023, but we assumed it was 2022.

16             MR. CONWAY:  I saw that today, Your Honor,

17   mistake, thanks.

18             THE COURT:  All right.  I verified the award in

19   Exhibit G was in favor of movant for $1.25 million in

20   consent to compensatory damages and about $600,000 in

21   attorney's fees.  And the firm had to expunge defamatory

22   statements.  Okay.  So, that just -- but that was awarded

23   solely as against the Debtor.

24             MR. CONWAY:  No, it was awarded against the Debtor

25   and a DePaola Trading jointly and severally.

1          THE COURT:  Okay.  And DePaola Trading is also

2     somebody you're seeking an examination of?

3          MR. CONWAY:  Yes.

4          THE COURT:  Okay.  And that was the Debtor's

5     company?

6          MR. CONWAY:  It was, Your Honor.

7          THE COURT:  Okay.  Is there anybody appearing on

8     behalf of DePaola Trading to object?  Okay.  Also, easy-

9     peasy.  Granted as to DePaola Trading.

10          Okay.  Now, Debtor and DePaola allege that the

11     (indiscernible) is paying the final award, meaning it could

12     not satisfy that capital requirement which then led FINRA

13     scheduling the firm for a hearing on its net capital

14     violations for 2/26/23.

15          However rather than attend the hearing, the firm

16     canceled the hearing on 2/24/23, involuntarily ceased doing

17     business that same day.  All of the firm's options, brokers

18     except for Debtor, became registered with a competing

19     options floor broker, PTR, Inc., and continued doing

20     identical business to that carried out at DePaola Trading.

21     Movant notes the suspicious nature of the firm's employees

22     all moving en masse to the same firm rather than seeking out

23     positions at a myriad of other firms.

24          Movant states thus that on information and belief

25     the transfer of all employees from DePaola Trading to PTR

1    was preplanned to frustrate the final award and Debtor's

2    others creditors.  Movant states that PTR also hired DePaola

3    Trading former chief administrative officer, the firm's

4    outside accountant, and the firm's financial and operational

5    principal, all of whom were non-producing employees even

6    though PTR already had its own billing, accounting, and

7    compliance personnel.

8         Movant also alleges on information and belief the

9    Debtor has represented a third parties that although he and

10   the firm can no longer operate, they are still carrying out

11   business as usual through PTR and that DePaola Trading's

12   former employees are carrying out their work with PTR using

13   DePaola Trading's workspace on the exchange floor and

14   computer equipment.

15        Okay.  So, we have, I assume, allegations of

16   fraudulent conveyance or tortious interference, or again,

17   assets moving out for free, another way of saying.  Is that

18   where we're going here in part?

19        MR. CONWAY:  It is, Your Honor.

20        THE COURT:  Okay.  Good, okay.  In March 2023,

21   movant made multiple demands for information from PTR

22   explaining the circumstances surrounding the transition of

23   DePaola Trading's employees or any agreements between PTR

24   and Debtor.  PTR has allegedly refused to provide any

25   information.  On March 24th, 2023, DePaola Trading opposed

 1    movant's petition to confirm and moved to vacate the final

 2    award.

 3              In the meantime, Debtor was allegedly hired by

 4    Dinosaur Financial Group, LLC as a floor broker on the

 5    exchange floor to do essentially the same work as he carried

 6    out at DePaola, and movant points out that despite this

 7    employment Debtor's Schedule J report his only compensation

 8    from Dinosaur was 100 -- which I think was 100,000.  But

 9    again, that's as to the Debtor.

10              Movant also states that according to Debtor's

11    broker check reported on FINRA, Debtor's registration with

12    Dinosaur Financial terminated as of August 2023, yet Debtor

13    did not advise the U.S. Trustee or counsel at the 341

14    meeting that his employment with Dinosaur had ended.

15              Is the Debtor, Mr. Goldstein, is the Debtor

16    currently employed?

17              MR. GOLDSTEIN:  Yes, Your Honor, with Dinosaur.

18    I'm not sure why -- what -- why the broker check shows that,

19    but he's still working for Dinosaur.

20              THE COURT:  Okay, thank you.  Okay.  So, DePaola

21    Trading did not file a petition, right, so there's no -- but

22    the state court -- the state court stayed everything?

23              MR. CONWAY:  The state court --

24              THE COURT:  (Indiscernible) speak.

25              MR. CONWAY:  Michael Conway again for Ms. D'Adamo.

1    The state court is -- has been asked to confirm the award.

2    We pointed out to the state court that there was no stay as

3    to DePaola Trading, but the state court did not respond in

4    one way or the other.

5              THE COURT:  All right.  Well, if they -- if they

6    still see it, I mean, if you can't get anywhere with them,

7    you could -- I guess you can do something by way of a

8    (indiscernible) order with me because they're not a Debtor

9    at this point.

10             Okay.  Movant asserts that it is established above

11   -- well, nothing's been established, but that the real

12   allegation is that the Debtor's been secreting and

13   concealing assets in order to avoid creditors to pay the

14   final award.  Okay, I got all that.

15             Okay.  So, the motion with respect to examining

16   the Debtor is granted.  The motion with respect to examining

17   DePaola Trading, Inc., is granted.

18             Anybody object on behalf of the wife?  Mr.

19   Goldstein?

20             MR. GOLDSTEIN:  No, Your Honor.

21             THE COURT:  Granted as to the wife.

22             Okay, Angela Grigoli, Debtor's sister-in-law, and

23   former chief administrative officer of DePaola Trading.

24   Upon information and belief, Ms. Grigoli performed billing

25   services to PTR after DePaola Trading shut down.  Movant

1    believes Grigoli will have all of the above information

2    enumerated for Lorana and additionally the registration of

3    the DePaola Trading employees of PTR from February 2024 and

4    Debtor's employment with Dinosaur Financial.  Is anybody

5    objecting on behalf of Angela Grigoli?

6              MR. GOLDSTEIN:  Your Honor, Scott Goldstein for

7    the Debtor.  I haven't received or seen any objection to

8    that.

9              THE COURT:  Granted, 2004 is granted.

10             PTR, Inc.  This is the firm to which all of

11   DePaola Trading employees migrated.  They filed the

12   objection.  Movant believes PTR will have information

13   relating to voluntary cessation of DePaola Trading,

14   registration of the former employees at PTR, business

15   conducted, and revenues generated through February of 2024,

16   client services by PTR through February 2024, and the

17   agreement between PTR and Debtor with DePaola Trading, any

18   payments from PTR to Debtor, and/or any individual or entity

19   on Debtor's behalf, and Debtor's employment at Dinosaur.

20   All right.  Let's skip that one for a minute.

21             Dinosaur Financial Group, Debtor's employer,

22   following cessation of DePaola Trading operations movant

23   believes Dinosaur has documented info related to voluntary

24   cessation of DePaola Trading, registration of the former

25   employees at PTR, Debtor's employment at Dinosaur and

1    compensation.  Well, why aren't you going to be able to get

2    that elsewhere?

3             MR. CONWAY:  Your Honor, Michael Conway.  Again,

4    Dinosaur has apparently a unique relationship with Mr.

5    DePaola.  Mr. DePaola testified in his 341 Meeting that

6    while he's sitting in a chair, Dinosaur -- he has no

7    agreement with them and they haven't paid him, but he

8    generated revenues.  We don't know where those revenues are,

9    but they're either sitting with Dinosaur or there's an

10   agreement they're going to PTR.  But the bottom line is that

11   any work he's doing at Dinosaur will show, from what we

12   heard at 341, what compensation he's owed and is not being

13   paid.  And we believe because of the relationship that

14   Dinosaur may have information relating to the PTR issue.

15   But bottom line is we know for a fact based on the 341 that

16   Dinosaur owes money to the estate.

17             THE COURT:  Why?

18             MR. CONWAY:  Well, according to the Debtor, he's

19   been working there but not -- and he's generated revenues

20   for them, he thinks that at least as the (indiscernible) the

21   prior 341 Meeting that he was owed 100,000, but he can't --

22             THE COURT:  Let me check, I just want to check

23   with my staff.  We checked service as to Dinosaur, service

24   was good.

25             MR. CONWAY:  Yes, it was good and --

1          THE COURT:  No, no, no, I'm asking my staff, Will?

2     Dinosaur was served at their main headquarters.  Will?

3     You're on mute, Will, or you're -- unless you're checking.

4          WILL:  Can you hear me now?

5          THE COURT:  Yeah, now I can hear you.

6          WILL:  Judge, yes, sorry, they were served, yeah,

7     at their headquarters, Dinosaur --

8          THE COURT:  At their headquarters, okay, all

9     right.  All right, TD Bank, movant -- so, granted as to

10    Dinosaur.

11         TD Bank.  Movant believes TD has documented info

12    related to Debtor's bank accounts with the bank and Debtor's

13    application for the home equity line of credit.  Okay,

14    granted.

15         American Express.  Movant believes AMEX has

16    documents (indiscernible) related to Debtor's account

17    including account statements and payments made by the

18    Debtor.  Okay, that's granted.  Citibank is granted.  You

19    may want to do this in steps, but.

20         Robinhood.  Debtor has a Robinwood account which

21    he has listed as one of his assets in the bankruptcy case.

22    Movant believes Robinhood has documented info related to

23    Debtor's account including account statements.  Granted.

24         Creative Plan Design Limited.  Movant believes

25    Creative Plan Design has documented info related to the

1   DePaola Trading profit-sharing plan and payments made by

2   Peter and/or the firm to the plan.  Tell me more about this.

3          MR. CONWAY:  Your Honor, Michael Conway again.

4   Another issue that came up in the 341, and something that we

5   had already investigated was that Mr. DePaola was paid --

6   well, the entire profit-sharing plan for all employees was

7   closed and monies were distributed, and his account value

8   was somewhere in the neighborhood of $400,000, maybe more.

9   We don't know for sure because our data was stale.

10         But the fact was it was liquidated, and we need to

11  see how much of it was sent to Mr. DePaola and should have

12  been transferred --

13         THE COURT:  But what if -- what is Creative Plan

14  Unlimited, what is it?

15         MR. CONWAY:  It's the entity that was

16  administering the profit-sharing plan.

17         MS. SMOKE:  Your Honor, this is Laura Smoke.  I'm

18  sitting in for Creative Plan Designs.  I was in --

19         THE COURT:  Well, when you say -- wait a minute,

20  you're sitting in -- who -- are you an attorney representing

21  them or are you just from the company?

22         MS. SMOKE:  No, I'm from the company.

23         THE COURT:  Okay.

24         MS. SMOKE:  So, would you like me to add color to

25  this or?

1          THE COURT:  No, I -- you can't.  Again, the

2     question you -- do you have any objection to the 2004 exam

3     and the document request with respect to the -- your

4     company?

5          MS. SMOKE:  I have -- no.

6          THE COURT:  Okay, granted.  All right.  I don't

7     need color; I just need to move on.

8          Okay.  PTR's objection.  PTR argues that movant

9     assertion that Debtor, "voluntarily" ceased DePaola's

10    trading operation is not entirely true with the FINRA

11    hearing schedule considering DePaola Trading's potential net

12    capital violations, DePaola Trading choice to shut down was

13    a little more than a determination that it would lose at the

14    hearing and FINRA would suspend its operations, meaning that

15    Debtor did not have -- well, it sounds to me -- okay, it

16    sounds to me like you got information just by what you just

17    said to me.

18          PTR also states that movant's assertion that the

19    transfer of all employees was preplanned is false.  Again,

20    this is why they need to talk to you.  PTR also raises the

21    fact that it has extensive correspondence in response to

22    movant's request for information which it provides in

23    Exhibits A through G and (indiscernible) to provide PTR

24    (indiscernible) -- I don't believe that they have been shown

25    good cause as to PTR.  PTR is pivotal here -- to much of the

1    information with respect to this Debtor and what 2004

2    allows.

3              Again, your testimony -- your objection is in the

4    way of testimony, that I don't take testimony like that.

5    Testify to them not to me.

6              Now, the only thing I want to get to is your

7    sensitive business information.  Let me see what you say

8    about that, but as to the other I'm going to overrule it.

9              PTR asserts that movant now works for one of PTR's

10   competitors.  Well, I guess she had to work somewhere.

11   Movant could use the identities and rates of its clients to

12   poach their clients and undercut PTR's rates.  Well, wait a

13   minute, you are allegedly concerned about something that

14   they're accusing you of doing, right?

15             MR. DICE:  Well, Your Honor, if I may.

16             THE COURT:  State your name, say your name.

17             MR. DICE:  Denis Dice for PTR.  You know going

18   back, Your Honor, we asked them multiple times last summer

19   in my letters whether or not they had any evidence

20   whatsoever to establish or support their claim.

21             THE COURT:  No, no, they're looking for evidence.

22   They have a right to look for evidence.

23             MR. DICE:  Well, there is none. My client -- my

24   clients and I --

25             THE COURT:  Again, that's not -- Mr. -- is it Mr.

1    Dice?

2              MR. DICE:  It is.

3              THE COURT:  Mr. Dice, that's it, that's the end of

4    this.  I think that Mr. DePaola can get his discharge, we

5    can move on, we can close this case because you said there's

6    no evidence.  Thank you, I wish my job could be that easy

7    every day.

8              MR. DICE:  Well --

9              THE COURT:  Just because you say there's no

10   evidence doesn't mean anything to me.  The fact that you're

11   objecting means something to me, but the fact that you say

12   there's no evidence they have a right -- did you read Rule

13   2004?  They have a right to -- let's read it again, let's

14   read it together.  It's a fishing expedition, and they have

15   a right to fish in your (indiscernible) based upon what I

16   know and based upon the things that's in your response which

17   is basically you testifying.

18              So, again, here's the way this works.  If -- I'm

19   going to grant their motion for 2004 and the subpoena, and

20   if you need -- if you need with respect to a specific item,

21   you feel you need a protective order, you will put in if you

22   think there's a -- you have again a -- there's a privilege

23   or you feel that you need a protective order, you'll come

24   back to me and you'll seek a protective order, right?

25              MR. DICE:  Yes, Your Honor, I mean she is a direct

1      competitor so yeah there is an ulterior motive.

2              THE COURT:  Well, I guess she is because she had

3      to go get a job somewhere, right?

4              MR. DICE:  Well, Your Honor, her brother got hit

5      with the big award, so he had to shut down his business.

6      So, I mean, she can't use this as a subterfuge to go and my

7      client's proprietary confidential information.  And I --

8              THE COURT:  I don't -- but again, I don't see how

9      it's a subterfuge.  She's trying to figure exactly what

10     you're alleging she's trying to do, right?  So, let's go

11     over it.  PTR lists many of the documents which movant has

12     included in its proposed subpoena such as client accounts,

13     transfers of DePaola Trading to PTR.  That would be fair

14     game.  Communications between PTR and such clients, trading

15     or business with such clients, documents identifying PTR

16     clients prior to.  Okay.

17             Well, again, you don't need anything pertaining to

18     PTR's clients prior to DePaola moving over there.  Correct,

19     Mr. Conway, can we -- can we limit that, please?

20             MR. CONWAY:  Yes, we're -- Your Honor, Michael

21     Conway.  We're asking about the clients, and we already have

22     the list of clients, it's not like they're a secret.  You

23     know, there's no poaching going on.  There's a limit of

24     clients and the clients typically use multiple brokers for

25     this, but -- and we know who they are.

1          You know, we're interested in what the revenues

2     were from DePaola Trading for which historically Mr. DePaola

3     would pay himself $3 to $4 million a year and now he's

4     destitute.  So, we want to know what those customers are

5     bringing in.

6          THE COURT:  So, you're limiting your examination.

7     One, you want to know everybody who was DePaola's client

8     that's now their client and the revenue.

9          MR. CONWAY:  Yeah, and the communications and --

10          THE COURT:  But if somebody was their client

11     before DePaola Trading or Mr. DePaola went over there, then

12     you are not looking for that or you shouldn't be now.

13          MR. CONWAY:  Michael Conway again.  There's a

14     little caveat there.  The way it usually works is that there

15     are multiple trading desks for each one of these folks and

16     the trading desks are the relationships.  So, for instance,

17     a customer might be -- might be giving business to both Ms.

18     D'Adamo, our client, Mr. DePaola, and to PTR.  But different

19     trading desks will send business to different places.

20          So, we're only interested in the client

21     relationships that existed with DePaola Trading, not any --

22     there may be some overlap that they were already doing

23     business with that customer, but the brokerage work that was

24     being done by these floor traders that came over from

25     DePaola Trading will only be done to the best of my

1  knowledge on behalf of the trading desk party at the

2  customer that DePaola Trading was using -- was doing

3  business for.

4          So, there's a possibility.  I'm not sure that

5  there were any overlapping customers, but there's a

6  possibility that PTR had a customer that had a trading desk

7  employee sending work over and it's the same customer that

8  had trading desks employees sending work to DePaola Trading.

9  So, in that instance obviously we (indiscernible) the

10  revenues generated by that trading desk relationship would

11  still be something we're looking for.

12          So, it's not as -- it's not so easy to say that

13  the customer -- and it may be that easy, I don't know

14  because PTR hasn't given us any information.  But it may be

15  that -- it may be that none of the customers overlap.  But

16  in the event that they do overlap we would ask that we still

17  are entitled to revenues relating to the work being done by

18  the former DePaola -- the former DePaola floor brokers on

19  behalf of the existing DePaola Trading customers.

20          THE COURT:  Mr. Dice?

21          MR. DICE:  Your Honor, they've already said that

22  Mr. DePaola works at a different firm right now.  So, to the

23  extent that these clients have decided to go to PTR, I mean,

24  that's completely up to them.  Mr. DePaola has nothing --

25          THE COURT:  Mr. Dice, this is not an argument on

1      that basis.  Again, they have a right to do the 2004.  The

2      only question is that they are -- they don't have a right

3      without a greater showing to obtain confidential and

4      proprietary trade information.

5                  MR. DICE:  And Your Honor, Denis Dice, I'm sorry.

6      My client's position, Your Honor, is that he is in direct

7      competition with these people, and he does not want to get

8      into his rates, his commission schedules, or the name of his

9      clients.  I mean, these are third party --

10                 THE COURT:  Okay, but I'm not asking -- I mean,

11     we're not talking about that.  We're talking about -- we're

12     talking about looking at DePaola Trading's former employees

13     and the work they're doing with respect to clients that were

14     not your clients prior to them coming over, right?

15                 MR. DICE:  Right.

16                 THE COURT:  We're not talking about your clients

17     now.  We're talking about the clients that DePaola Trading's

18     former employees are working on.  And I don't think you need

19     to disclose rates.

20                 MR. CONWAY:  Thank you.

21                 MR. DICE:  Your Honor, it's Denis Dice again for

22     PTR.  I would just like to point out that these clients are

23     not exclusive to a certain brokerage or options trading

24     firm.  You know, there are, I believe, there are --

25                 THE COURT:  Yeah, I mean, he just said that I

1  understand that.  But just because you got clients doesn't

2  mean he stole it, I get that.

3         MR. DICE:  No, no, I just think that multiple

4  clients may do work with, you know, multiple firms at the

5  same time, so there --

6         THE COURT:  Right.

7         MR. DICE:  Right.

8         THE COURT:  Right.  So, again, if you're not

9  disclosing your rates, you don't have to worry about the

10  movant, right?  Because the movant could have some -- many

11  of the same clients, correct, based upon that same argument?

12         MR. DICE:  That's my understanding.  I don't know

13  to what extent, but I believe there would be some.

14         THE COURT:  Okay.  You filed this objection late

15  to begin with I'll point out.  So, let us figure out a way

16  that -- again, that I'm going to grant 2004 as to PTR, not

17  as to rates and client -- and the other information you're

18  seeking is fine, but client information, you know, it could

19  be (indiscernible) former employers.  But client

20  information, again, only with respect to clients that

21  DePaola Trading former employees were over, accounts they

22  brought over regardless of whether you also have that

23  account.  Is that correct?

24         MR. DICE:  Your Honor, Denis Dice again.  This is

25  a situation where there are no client accounts, it's not

1  like your typical brokerage firm.  So, what it is, is they

2  have maybe a relationship with an options trading firm, and

3  they just direct the trades to the options trade.  So,

4  there's no "client" account per se.  It's just I want to use

5  PTR for this trade, I want to use Dinosaur for that trade.

6  So, it's a very fluid situation.

7          So, there's no client accounts that were brought

8  over so to speak.  Some clients may have developed a

9  relationship with PTR as a result of a DePaola employee that

10  came.

11          THE COURT:  Yeah, yeah, the stuff that flowed from

12  the DePaola Trading employees is what we're talking about.

13  If you need a protective order, you make the motion, and

14  I'll hear it.

15          MR. DICE:  Okay, thank you.

16          THE COURT:  But otherwise, I'm otherwise, again,

17  Mr. Conway, do you understand the limitation I'm putting on

18  you?  No rates and not information that precedes the time

19  that the employees came over.

20          MR. CONWAY:  Yes, Your Honor, I get it, and I'll

21  try and work that into the final version of the subpoena.

22  And just so Your Honor's aware, we don't care about rates

23  with the way it works in this business is they just give a

24  reduced commission based on a rebate they get from the

25  exchange and they -- the customers, savvy customers know

1    about this, and they ask for a rebate.  And the amount of

2    the rebate might garner loyalty.

3            We don't care about that; we just want to know

4    what revenues should have been paid to Mr. DePaola here.  We

5    don't care about rebates or customer rates as they put it.

6    So, I'll make it clear that we're not interested in what

7    goes into making that sausage, we just want to see the --

8            THE COURT: All right.  But what's your theory --

9    what's your theory here about how this comes back to

10   DePaola, DePaola Trading?

11           MR. CONWAY:  DePaola is the person with the

12   relationship for every one of these customers.

13           THE COURT:  Right.

14           MR. CONWAY:  None of these floor brokers had a

15   relationship with these customers.  He testified as much at

16   the arbitration.  And when they shut down the business he

17   could have gone with PTR, but he didn't he went to -- he

18   went to Dinosaur to make zero dollars where he was making $4

19   -- $3 to $4 million a year with these customers before that.

20   Where's that $3 to $4 million going?  Did he just

21   voluntarily give it to Mr. Dice's client.  No, he did not do

22   that.  We know that that didn't happen.  So --

23           THE COURT:  And you think there's some way he or

24   somebody related to him continues to be compensated for that

25   old connection?

1        MR. CONWAY:  That's correct, Your Honor, and we

2   believe there's probably correspondence out there where they

3   explain to various people including the floor brokers what's

4   really going on here and maybe telling the customers what's

5   really going on here.  You know, don't worry, Peter's still

6   your guy because he's your relationship, but send all your

7   business to us now, that sort of a thing.  We believe that

8   stuff's out there.  So, between the revenues and the

9   communications that's what we really want.

10        THE COURT:  Well, let's assume -- well, they have

11   -- again, but you're -- that would -- it would require some

12   kind of remuneration coming back because otherwise I'm

13   assuming you (indiscernible) business based upon the way you

14   described to me that (indiscernible) you know, if he goes

15   out of business his clients are fair game.

16        MR. CONWAY:  If he -- well, let's put it this way,

17   he didn't have to go out of business.  He did it voluntarily

18   and then moved everybody else --

19        THE COURT:  Well, nobody has to go out of

20   business, but he has a right to go out of business.  Go

21   ahead.

22        MR. CONWAY:  Yeah, 80 cents of every dollar that

23   they brought in went into his pocket.  And then when --

24        THE COURT:  No, no, no, you can't argue -- you

25   can't, again, you're not --

1          MR. CONWAY:  I'm not arguing facts, I'm just

2     suggesting --

3          THE COURT:  I'm asking you -- I'm asking you why

4     doesn't anybody have a right to go wherever they want once

5     he's no longer doing their work for them?

6          MR. CONWAY:  Michael Conway, again.  Your Honor,

7     if that were -- if it were as simple as that you'd be right,

8     but since we believe that the ultimate goal here is for him

9     to recover all the money that he was making before --

10          THE COURT:  Okay.  So, you based upon a theory of

11     somehow or other, there are undisclosed assets or income.

12          MR. CONWAY:  Undisclosed assets, income being

13     parked some place or being paid to an LLC --

14          THE COURT:  Which is why -- which is why -- this

15     is why, Mr. Dice, they're entitled to it within that scope.

16          MR. DICE:  And Your Honor, I would just say there

17     has to be, you know, according to the case law some good

18     cause for that.  Mr. DePaola deny -- they deny that he's

19     getting any income when you look at their application.  My

20     client saw that --

21          THE COURT:  Yeah, but you know that it has -- it

22     has to be good cause under Rule 11 before they bring an

23     adversary proceeding.  2004 is much broader than that.

24          MR. DICE:  Well --

25          THE COURT:  If you feel that they're asking for

1    something and insist on something, once you tell them you

2    believe it's confidential and proprietary, if they insist on

3    it, make a motion for protective order and we'll take them

4    up item by item.  I can't do this in a vacuum.  What I can

5    do in a vacuum is determine that your client is somebody

6    they can pursue in a 2004 venue, determining whether or not

7    something they ask for is beyond what they're entitled to,

8    you can come in and (indiscernible) for a protective order,

9    okay?

10          MR. DICE:  Thank you, Your Honor.  Just so I'm

11    clear, I mean, basically, it's going to be the total but not

12    how you get to the total in terms of rate schedules,

13    commissions, what they charge, all their internal you know.

14          THE COURT:  No, they're going to be asking you

15    whether any funds or -- you know, are going out to DePaola

16    is what they're going to be asking you.  And they'll want to

17    see what the former employees are up to.  Your current

18    employees --

19          MR. DICE:  That'll --

20          THE COURT:  -- with respect to nothing that

21    occurred before they got there, but with respect to what

22    occurred after they got there, but not rates.  Okay?

23          MR. DICE:  Okay, thank you.

24          THE COURT:  Okay, so the motion is granted as per

25    the record.  Upload an order.

1          MR. CONWAY:  Thank you, Your Honor.

2          (Whereupon these proceedings were concluded at

3     3:04 PM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               I N D E X

2

3                    RULINGS

4                                        Page      Line

5   Omnibus Motion for 2004 Examination      31        24

6   Granted as Per the Record

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3        I, Rita Weltsch, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Rita Weltsch

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  February 27, 2024

| & | | |
|---|---|---|

**&**   3:19 4:1

**0**

**07834**   3:6

**1**

**1,884,572.50.**
  6:10
**1.25**   10:19
**10**   9:24
**100**   13:8
**100,000**   13:8
  16:21
**10014**   3:15
**10017**   3:22
**11**   5:23 30:22
**11201**   1:13
**11501**   34:23
**12151**   34:6
**1400**   4:11
**1502**   4:3
**1528**   4:3
**16th**   3:21
**19102**   4:4
**19th**   6:22

**2**

**2**   3:13
**2/24/23**   11:16
**2/26/23**   11:14
**2003**   9:15
**2004**   2:1 5:15
  6:1,2,11 15:9
  19:2 20:1
  21:13,19 25:1
  26:16 30:23
  31:6 33:5

**2022**   10:14,15
**2023**   9:2,15
  10:15 12:20,25
  13:12
**2024**   1:15 6:5
  15:3,15,16
  34:25
**23-42634**   1:3
**24**   33:5
**24th**   12:25
**27**   34:25
**271**   1:12
**280**   3:5
**2:26**   1:16

**3**

**3**   23:3 28:19,20
**300**   34:22
**31**   33:5
**3101**   4:11
**330**   34:21
**341**   13:13 16:5
  16:12,15,21
  18:4
**36**   2:1
**3:04**   32:3

**4**

**4**   23:3 28:18,19
  28:20
**40,000**   8:25
**400,000**   18:8

**5**

**5th**   6:5

**6**

**6**   1:15 8:23

**600,000**   10:20

**7**

**747**   3:21

**8**

**80**   29:22
**85012**   4:12

**a**

**able**   16:1
**above**   14:10
  15:1
**account**   8:25
  17:16,17,20,23
  17:23 18:7
  26:23 27:4
**accountant**
  12:4
**accounting**
  12:6
**accounts**   17:12
  22:12 26:21,25
  27:7
**accurate**   34:4
**accusing**   20:14
**actually**   7:9
  9:23
**add**   18:24
**additionally**
  15:2
**adjourn**   7:14
  8:2,15
**adjourned**
  6:22 7:3,9,15
**administering**
  18:16
**administrative**
  12:3 14:23

**adversary**
  30:23
**advise**   13:13
**afternoon**   5:5
  5:8,10,14,17
**agree**   7:13
**agreed**   8:3
**agreement**
  15:17 16:7,10
**agreements**
  12:23
**ahead**   29:21
**allegation**
  14:12
**allegations**
  12:15
**allege**   11:10
**allegedly**   12:24
  13:3 20:13
**alleges**   9:17
  12:8
**alleging**   22:10
**allow**   9:11
**allows**   20:2
**american**
  17:15
**amex**   6:18 8:19
  9:14 17:15
**amount**   28:1
**angela**   14:22
  15:5
**anna**   3:25 5:13
**anybody**   11:7
  14:18 15:4
  30:4
**apparently**
  16:4

**appear** 6:12
**appearances** 5:4
**appearing** 5:6
5:11,18 11:7
**application** 17:13 30:19
**arbitration** 10:13 28:16
**argue** 29:24
**argues** 19:8
**arguing** 30:1
**argument** 5:22
24:25 26:11
**asked** 9:23
14:1 20:18
**asking** 7:22
9:25 17:1
22:21 25:10
30:3,3,25
31:14,16
**asserting** 9:7
**assertion** 19:9
19:18
**asserts** 9:3
14:10 20:9
**assets** 9:4
12:17 14:13
17:21 30:11,12
**associate** 5:16
**assume** 12:15
29:10
**assumed** 10:15
**assuming** 29:13
**attend** 11:15

**attorney** 3:4,11
8:1 18:20
**attorney's** 10:21
**attorneys** 3:20
4:2,10
**august** 13:12
**avenue** 3:21
4:11
**avoid** 14:13
**award** 10:14
10:18 11:11
12:1 13:2 14:1
14:14 22:5
**awarded** 10:22
10:24
**aware** 27:22
**az** 4:12

**b**

**b** 1:21
**back** 20:18
21:24 28:9
29:12
**bad** 7:12
**bank** 8:24 17:9
17:11,12,12
**bankruptcy** 1:1,11,23 6:2
17:21
**based** 16:15
21:15,16 26:11
27:24 29:13
30:10
**basically** 21:17
31:11
**basis** 25:1

**bear** 6:19
10:11
**begins** 8:22
**behalf** 2:2 5:6
5:9,11,18 11:8
14:18 15:5,19
24:1,19
**belief** 9:3 11:24
12:8 14:24
**believe** 16:13
19:24 25:24
26:13 29:2,7
30:8 31:2
**believes** 15:1
15:12,23 17:11
17:15,22,24
**best** 23:25
**beyond** 31:7
**big** 22:5
**billing** 12:6
14:24
**blur** 7:11
**book** 9:9
**bottom** 16:10
16:15
**bring** 30:22
**bringing** 23:5
**broader** 30:23
**broker** 8:20
11:19 13:4,11
13:18
**brokerage** 6:18
8:19 23:23
25:23 27:1
**brokers** 6:17
8:18 9:6,8
11:17 22:24

24:18 28:14
29:3
**brooklyn** 1:13
**brother** 22:4
**brought** 26:22
27:7 29:23
**bryan** 4:10
5:18
**building** 3:14
**business** 6:13
8:20 9:9,15
11:17,20 12:11
15:14 20:7
22:5,15 23:17
23:19,23 24:3
27:23 28:16
29:7,13,15,17
29:20,20

**c**

**c** 1:12 3:1 5:1
34:1,1
**cadman** 1:12
**calendar** 5:2
5:23
**canceled** 11:16
**capital** 11:12
11:13 19:12
**care** 27:22 28:3
28:5
**carried** 11:20
13:5
**carrying** 12:10
12:12
**case** 1:3 5:3 8:1
17:21 21:5
30:17

**cause** 19:25 30:18,22
**caveat** 23:14
**ceased** 11:16 19:9
**ceasing** 9:15
**central** 4:11
**cents** 29:22
**certain** 25:23
**certified** 34:3
**cessation** 15:13 15:22,24
**chair** 16:6
**chapter** 5:23
**charge** 31:13
**check** 13:11,18 16:22,22
**checked** 16:23
**checking** 17:3
**chief** 12:3 14:23
**choice** 19:12
**chris** 4:14 5:17
**circumstances** 12:22
**citibank** 17:18
**claim** 6:10 20:20
**claimed** 8:24
**clear** 28:6 31:11
**clerk** 5:2
**client** 10:13 15:16 20:23 22:12 23:7,8 23:10,18,20 26:17,18,19,25

27:4,7 28:21 30:20 31:5
**client's** 22:7 25:6
**clients** 20:11 20:12,24 22:14 22:15,16,18,21 22:22,24,24 24:23 25:9,13 25:14,16,17,22 26:1,4,11,20 27:8 29:15
**close** 21:5
**closed** 18:7
**color** 18:24 19:7
**come** 21:23 31:8
**comes** 28:9
**coming** 25:14 29:12
**commission** 25:8 27:24
**commissions** 31:13
**communicati...** 22:14 23:9 29:9
**company** 11:5 18:21,22 19:4
**compensated** 28:24
**compensation** 13:7 16:1,12
**compensatory** 10:20

**competing** 11:18
**competition** 25:7
**competitor** 22:1
**competitors** 20:10
**completely** 24:24
**compliance** 12:7
**computer** 12:14
**concealing** 14:13
**concerned** 20:13
**concluded** 32:2
**conducted** 15:15
**confidential** 22:7 25:3 31:2
**confirm** 13:1 14:1
**connection** 7:10 28:25
**consent** 10:20
**consented** 8:3 8:15
**considering** 19:11
**content** 9:11
**contested** 5:22 6:1
**continue** 8:16

**continued** 11:19
**continues** 28:24
**convert** 6:21
**conveyance** 12:16
**conway** 2:2 3:24 5:10,11 9:22,22 10:2,4 10:7,16,24 11:3,6 12:19 13:23,25,25 16:3,3,18,25 18:3,3,15 22:19,20,21 23:9,13,13 25:20 27:17,20 28:11,14 29:1 29:16,22 30:1 30:6,6,12 32:1
**conway's** 7:16
**correct** 9:21 10:13 22:18 26:11,23 29:1
**corresponde...** 19:21 29:2
**counsel** 13:13
**country** 34:21
**court** 1:1,11 5:4,20 6:24 7:7 7:17,22 8:4,13 8:16 9:5,25 10:3,5,8,18 11:1,4,7 12:20 13:20,22,22,23 13:24 14:1,2,3

14:5,21 15:9
16:17,22 17:1
17:5,8 18:13
18:19,23 19:1
19:6 20:16,21
20:25 21:3,9
22:2,8 23:6,10
24:20,25 25:10
25:16,25 26:6
26:8,14 27:11
27:16 28:8,13
28:23 29:10,19
29:24 30:3,10
30:14,21,25
31:14,20,24
**creative** 17:24
17:25 18:13,18
**credit** 17:13
**creditor** 3:20
4:10 5:25
**creditors** 9:5
12:2 14:13
**cured** 7:20
**current** 31:17
**currently**
13:16
**customer**
23:17,23 24:2
24:6,7,13 28:5
**customers** 23:4
24:5,15,19
27:25,25 28:12
28:15,19 29:4

**d**

**d** 5:1 33:1
**d'adamo** 5:12
9:23 13:25

23:18
**d'adamo's** 6:1
**dadamo** 2:2
3:20
**damages** 10:20
**data** 18:9
**date** 8:9 9:1
34:25
**day** 11:17 21:7
**debtor** 1:9 3:4
5:6 6:5,16 7:6
8:6,17,20,24
9:3,9,9,17,17
9:20,21 10:1,2
10:4,5,5,8,12
10:23,24 11:10
11:18 12:9,24
13:3,9,12,15
13:15 14:8,16
15:7,17,18
16:18 17:18,20
19:9,15 20:1
**debtor's** 6:8,8
6:9,13 9:6,13
11:4 12:1 13:7
13:10,11 14:12
14:22 15:4,19
15:19,21,25
17:12,12,16,23
**december**
10:14
**decided** 24:23
**defamatory**
10:21
**demands** 12:21
**denis** 4:6 5:14
20:17 25:5,21

26:24
**denville** 3:6
**deny** 30:18,18
**depaola** 1:7 3:4
5:3,7 6:9,12,18
8:19 10:25
11:1,8,9,10,20
11:25 12:2,11
12:13,23,25
13:6,20 14:3
14:17,23,25
15:3,11,13,17
15:22,24 16:5
16:5 18:1,5,11
19:11,12 21:4
22:13,18 23:2
23:2,11,11,18
23:21,25 24:2
24:8,18,18,19
24:22,24 25:12
25:17 26:21
27:9,12 28:4
28:10,10,11
30:18 31:15
**depaola's** 19:9
23:7
**department**
3:10
**described**
29:14
**design** 17:24
17:25
**designs** 18:18
**desk** 24:1,6,10
**desks** 23:15,16
23:19 24:8

**despite** 8:22
13:6
**destitute** 23:4
**determination**
19:13
**determine** 31:5
**determining**
31:6
**developed** 27:8
**dice** 4:6 5:14
5:14 20:15,17
20:17,23 21:1
21:2,3,8,25
22:4 24:20,21
24:25 25:5,5
25:15,21,21
26:3,7,12,24
26:24 27:15
30:15,16,24
31:10,19,23
**dice's** 28:21
**different** 9:7
23:18,19 24:22
**dinosaur** 13:4
13:8,12,14,17
13:19 15:4,19
15:21,23,25
16:4,6,9,11,14
16:16,23 17:2
17:7,10 27:5
28:18
**direct** 21:25
25:6 27:3
**directing** 6:11
**discharge** 21:4
**disclose** 25:19

**disclosing** 26:9
**dismiss** 6:21,25
8:7
**distributed**
18:7
**district** 1:2
**divide** 6:7
**document** 19:3
**documented**
15:23 17:11,22
17:25
**documents**
6:13 17:16
22:11,15
**doing** 11:16,19
16:11 20:14
23:22 24:2
25:13 30:5
**dollar** 29:22
**dollars** 8:23
9:11,18 28:18
**doug** 5:16
**douglas** 4:7

**e**

**e** 1:21,21 3:1,1
5:1,1 33:1 34:1
**earning** 8:22
**east** 1:12
**eastern** 1:2
**easy** 9:19 10:5
10:6 11:8 21:6
24:12,13
**ecro** 1:25
**either** 16:9
**employed** 9:6
13:16

**employee** 24:7
27:9
**employees**
11:21,25 12:5
12:12,23 15:3
15:11,14,25
18:6 19:19
24:8 25:12,18
26:21 27:12,19
31:17,18
**employer** 9:1
15:21
**employers**
26:19
**employment**
13:7,14 15:4
15:19,25
**en** 11:22
**ended** 13:14
**entire** 9:6 18:6
**entirely** 19:10
**entitled** 24:17
30:15 31:7
**entity** 15:18
18:15
**enumerated**
15:2
**equipment**
12:14
**equity** 17:13
**essentially** 13:5
**establish** 20:20
**established**
14:10,11
**estate** 16:16
**event** 24:16

**everybody**
23:7 29:18
**evidence** 20:19
20:21,22 21:6
21:10,12
**exactly** 22:9
**exam** 6:1 19:2
**examination**
2:1 6:12 11:2
23:6 33:5
**examine** 6:4
9:20
**examining**
14:15,16
**except** 7:15
11:18
**exchange** 6:19
8:20 9:15
12:13 13:5
27:25
**exclusive** 25:23
**executing** 9:13
**exhibit** 10:19
**exhibits** 6:15
19:23
**existed** 23:21
**existing** 24:19
**expedition**
21:14
**explain** 29:3
**explaining**
12:22
**express** 17:15
**expunge** 10:21
**extend** 6:25
7:14

**extensive** 19:21
**extent** 24:23
26:13

**f**

**f** 1:21 34:1
**fact** 16:15
18:10 19:21
21:10,11
**facts** 30:1
**fair** 22:13
29:15
**false** 19:19
**favor** 10:19
**february** 1:15
6:5 15:3,15,16
34:25
**federal** 3:14
6:2
**feel** 21:21,23
30:25
**fees** 8:8 10:21
**felix** 3:25 5:13
**figure** 22:9
26:15
**file** 13:21
**filed** 2:1 6:4,5
6:10 8:10
15:11 26:14
**final** 10:14
11:11 12:1
13:1 14:14
27:21
**financial** 12:4
13:4,12 15:4
15:21
**fine** 26:18

| | | | |
|---|---|---|---|
| **finra** 11:12 | **free** 12:17 | 8:14 13:15,17 | **heard** 16:12 |
| 13:11 19:10,14 | **friday** 6:3 | 14:19,20 15:6 | **hearing** 2:1 |
| **firm** 6:9,18 | **frustrate** 12:1 | 15:6 | 5:25 11:13,15 |
| 8:19 9:7,13 | **full** 8:24 | **good** 5:5,8,10 | 11:16 19:11,14 |
| 10:21 11:13,15 | **funds** 31:15 | 5:14,17 12:20 | **hello** 5:10 |
| 11:22 12:10 | **g** | 16:24,25 19:25 | **help** 7:4 |
| 15:10 18:2 | | 30:17,22 | **hershey** 1:22 |
| 24:22 25:24 | **g** 5:1 10:19 | **gotto** 4:19 | **hired** 12:2 13:3 |
| 27:1,2 | 19:23 | **grant** 21:19 | **historically** |
| **firm's** 11:17,21 | **game** 22:14 | 26:16 | 23:2 |
| 12:3,4 | 29:15 | **granted** 10:8 | **hit** 22:4 |
| **firms** 11:23 | **garner** 28:2 | 11:9 14:16,17 | **holding** 8:25 |
| 26:4 | **gary** 4:19 | 14:21 15:9,9 | **home** 8:24 |
| **fish** 21:15 | **generated** | 17:9,14,18,18 | 17:13 |
| **fishing** 21:14 | 15:15 16:8,19 | 17:23 19:6 | **hon** 1:22 |
| **floor** 3:21 6:19 | 24:10 | 31:24 33:6 | **honest** 7:25 |
| 8:20 11:19 | **getting** 7:18 | **graver** 4:14 | **honor** 5:5,8,11 |
| 12:13 13:4,5 | 30:19 | 5:17,18 | 5:14,17 7:5,8 |
| 23:24 24:18 | **giacovas** 3:19 | **greater** 25:3 | 7:21,25 9:22 |
| 28:14 29:3 | **give** 8:4 27:23 | **grigoli** 14:22 | 10:16 11:6 |
| **flowed** 27:11 | 28:21 | 14:24 15:1,5 | 12:19 13:17 |
| **fluid** 27:6 | **given** 24:14 | **grounds** 7:19 | 14:20 15:6 |
| **fogle** 4:7 5:16 | **giving** 23:17 | 7:19 8:7 | 16:3 18:3,17 |
| **folks** 23:15 | **go** 6:6 22:3,6 | **group** 13:4 | 20:15,18 21:25 |
| **following** | 22:10 24:23 | 15:21 | 22:4,20 24:21 |
| 15:22 | 29:17,19,20,20 | **guess** 14:7 | 25:5,6,21 |
| **foregoing** 34:3 | 30:4 | 20:10 22:2 | 26:24 27:20 |
| **former** 6:9,13 | **goal** 30:8 | **guy** 29:6 | 29:1 30:6,16 |
| 12:3,12 14:23 | **goes** 28:7 29:14 | **h** | 31:10 32:1 |
| 15:14,24 24:18 | **going** 8:2 12:18 | | **honor's** 27:22 |
| 24:18 25:12,18 | 16:1,10 20:8 | **handle** 10:10 | **i** |
| 26:19,21 31:17 | 20:17 21:19 | **hange** 6:20 | **identical** 11:20 |
| **francesca** 2:2 | 22:23 26:16 | **happen** 28:22 | **identifying** |
| 3:20 5:25 | 28:20 29:4,5 | **headquarters** | 22:15 |
| **fraudulent** | 31:11,14,15,16 | 17:2,7,8 | **identities** 20:11 |
| 12:16 | **goldstein** 3:3,8 | **hear** 17:4,5 | **improperly** 9:4 |
| | 5:5,6 7:5,6,8 | 27:14 | |
| | 7:21,24 8:4,6 | | |

include 6:14
included 22:12
including
    17:17,23 29:3
inclusivity 7:1
income 9:1
    30:11,12,19
indicated 7:16
indiscernible
    6:14,14 7:9
    8:14,21 9:4
    11:11 13:24
    14:8 16:20
    17:16 19:23,24
    21:15 24:9
    26:19 29:13,14
    31:8
individual
    15:18
info 15:23
    17:11,22,25
information
    9:3 11:24 12:8
    12:21,25 14:24
    15:1,12 16:14
    19:16,22 20:1
    20:7 22:7
    24:14 25:4
    26:17,18,20
    27:18
insist 31:1,2
instance 23:16
    24:9
insurance 8:9
interested 23:1
    23:20 28:6

interference
    12:16
internal 31:13
internet 7:10
investigated
    18:5
involuntarily
    11:16
issue 16:14
    18:4
issued 9:24
item 21:20
    31:4,4

**j**

j 3:8 13:7
jaeger 4:10
    5:19
jeremy 3:17
    5:8
job 21:6 22:3
jointly 10:25
judge 1:23
    17:6
julian 1:7 3:4
    5:3,7
justice 3:10

**k**

k 4:17
keller 4:9 5:18
kilgard 4:18
kind 7:2,13
    29:12
know 7:17,18
    16:8,15 18:9
    20:17 21:16
    22:23,25 23:1

23:4,7 24:13
25:24 26:4,12
26:18 27:25
28:3,22 29:5
29:14 30:17,21
31:13,15
knowledge
    24:1

**l**

lack 8:9
large 8:20
late 26:14
laura 4:17
    18:17
law 3:3 14:22
    30:17
lazare 3:19
lead 8:1
led 11:12
left 7:2,3
legal 34:20
letter 6:5
letters 20:19
limit 22:19,23
limitation
    27:17
limited 17:24
limiting 23:6
line 16:10,15
    17:13 33:4
liquidated
    18:10
list 22:22
listed 17:21
lists 22:11
little 19:13
    23:14

llc 3:3 13:4
    30:13
llp 3:19 4:1,9
longer 12:10
    30:5
look 20:22
    30:19
looking 20:21
    23:12 24:11
    25:12
looks 7:12
lorana 15:2
lord 1:22
lose 19:13
lot 5:22
loyalty 28:2

**m**

made 12:21
    17:17 18:1
main 3:5 17:2
make 27:13
    28:6,18 31:3
making 8:12
    28:7,18 30:9
march 6:22
    12:20,25
masse 11:22
matter 1:5 5:2
matters 6:24
    7:1,8
mean 7:4,18
    14:6 21:10,25
    22:6 24:23
    25:9,10,25
    26:2 31:11
meaning 9:1
    11:11 19:14

**means** 21:11
**meeting** 13:14
  16:5,21
**member** 6:9
**michael** 2:2
  3:24 5:11 9:22
  13:25 16:3
  18:3 22:20
  23:13 30:6
**migrated** 15:11
**million** 8:23
  10:19 23:3
  28:19,20
**millions** 8:23
  9:11,18
**mineola** 34:23
**minute** 15:20
  18:19 20:13
**minutes** 10:11
**mistake** 10:17
**money** 16:16
  30:9
**monies** 18:7
**motion** 2:1 6:1
  6:5,6,21,25,25
  7:14,15,19 8:7
  10:15 14:15,16
  21:19 27:13
  31:3,24 33:5
**motive** 22:1
**movant** 6:4,8,8
  6:10,10,16
  7:23 8:17,22
  9:3,5,16,17
  10:19 11:21,24
  12:2,8,21 13:6
  13:10 14:10,25

  15:12,22 17:9
  17:11,15,22,24
  19:8 20:9,11
  22:11 26:10,10
**movant's** 13:1
  19:18,22
**move** 19:7 21:5
**moved** 7:11
  13:1 29:18
**moving** 5:12
  11:22 12:17
  22:18
**moyle** 3:19
**multiple** 12:21
  20:18 22:24
  23:15 26:3,4
**mute** 17:3
**myriad** 11:23

**n**

**n** 3:1 5:1 33:1
  34:1
**name** 20:16,16
  25:8
**nancy** 1:22
**nature** 11:21
**need** 18:10
  19:7,7,20
  21:20,20,21,23
  22:17 25:18
  27:13
**neighborhood**
  18:8
**net** 11:13 19:11
**new** 1:2 3:15
  3:22 6:19 8:19
  9:10,14

**nhl** 1:3
**nine** 9:24
**nj** 3:6
**non** 12:5
**north** 4:11
**notes** 11:21
**nothing's**
  14:11
**ny** 1:13 3:15,22
  34:23

**o**

**o** 1:21 5:1 34:1
**object** 11:8
  14:18
**objecting** 15:5
  21:11
**objection** 6:4,4
  6:6 15:7,12
  19:2,8 20:3
  26:14
**obtain** 25:3
**obvious** 5:24
**obviously** 24:9
**occurred** 31:21
  31:22
**office** 3:12 7:10
  7:13 8:10 9:8
**officer** 12:3
  14:23
**offices** 3:3
**okay** 5:20 6:6
  6:20 7:24 8:16
  10:3,8,11,12
  10:12,22 11:1
  11:4,7,8,10
  12:15,20,20
  13:20,20 14:10

  14:14,15,22
  17:8,13,18
  18:23 19:6,8
  19:15 22:16
  25:10 26:14
  27:15 30:10
  31:9,22,23,24
**old** 28:25 34:21
**omnibus** 2:1
  6:1 33:5
**once** 30:4 31:1
**operate** 12:10
**operating** 8:11
  8:21
**operation**
  19:10
**operational**
  12:4
**operations**
  9:15 15:22
  19:14
**opposed** 12:25
**opposition**
  10:9
**option** 6:17
**options** 8:18
  9:7,14 11:17
  11:19 25:23
  27:2,3
**order** 6:11
  14:8,13 21:21
  21:23,24 27:13
  31:3,8,25
**orders** 9:13
**outside** 12:4
**overlap** 23:22
  24:15,16

**overlapping** 24:5
**overrule** 20:8
**owed** 16:12,21
**owes** 16:16
**own** 12:6
**owner** 6:18 8:18

**p**

**p** 3:1,1 5:1
**p.m.** 1:16
**pa** 4:4
**page** 33:4
**paid** 8:8,25 9:8 9:18 16:7,13 18:5 28:4 30:13
**parked** 30:13
**part** 9:16 12:18
**parties** 6:3 8:3 9:24 12:9
**partner** 5:12 5:16
**party** 4:2 5:12 24:1 25:9
**pay** 14:13 23:3
**paying** 8:23 11:11
**payments** 15:18 17:17 18:1
**peasy** 9:19 10:6 11:9
**people** 25:7 29:3
**performed** 14:24

**person** 28:11
**personnel** 12:7
**pertaining** 22:17
**peter** 1:7 3:4 5:3,7 18:2
**peter's** 29:5
**petition** 9:1 13:1,21
**philadelphia** 4:4
**phoenix** 4:12
**pia** 3:25 5:13
**pivotal** 19:25
**place** 30:13
**places** 23:19
**plan** 17:24,25 18:1,2,6,13,16 18:18
**plaza** 1:12
**please** 5:4 22:19
**pm** 32:3
**poach** 20:12
**poaching** 22:23
**pocket** 29:23
**point** 14:9 25:22 26:15
**pointed** 14:2
**points** 13:6
**position** 25:6
**positions** 11:23
**possession** 3:4 5:6
**possibility** 24:4 24:6

**potential** 19:11
**potter** 3:19
**precedes** 27:18
**preplanned** 12:1 19:19
**present** 4:16
**principal** 12:5
**prior** 16:21 22:16,18 25:14
**privilege** 21:22
**probably** 29:2
**procedure** 6:2
**proceed** 7:16
**proceeding** 30:23
**proceedings** 32:2 34:4
**process** 8:11
**produce** 6:12
**producing** 12:5
**profit** 18:1,6 18:16
**progress** 8:12
**proof** 6:10 8:9
**proper** 6:3
**proposed** 5:15 6:14 22:12
**proprietary** 22:7 25:4 31:2
**protective** 21:21,23,24 27:13 31:3,8
**provide** 12:24 19:23
**provided** 8:10
**provides** 19:22

**ptr** 4:2 5:15 6:3 9:6,12 11:19 11:25 12:2,6 12:11,12,21,23 12:24 14:25 15:3,10,12,14 15:16,17,18,25 16:10,14 19:8 19:18,20,23,25 19:25 20:9,17 22:11,13,14,15 23:18 24:6,14 24:23 25:22 26:16 27:5,9 28:17
**ptr's** 19:8 20:9 20:12 22:18
**pursuant** 6:1 6:11
**pursue** 31:6
**put** 5:23 21:21 28:5 29:16
**putting** 27:17

**q**

**question** 19:2 25:2
**questions** 5:20
**quickly** 8:6
**quite** 7:2 8:1

**r**

**r** 1:21 3:1 5:1 34:1
**raises** 19:20
**raising** 8:22
**rate** 31:12

rates 20:11,12
25:8,19 26:9
26:17 27:18,22
28:5 31:22
rather 11:15
11:22
read 21:12,13
21:14
real 14:11
really 29:4,5,9
reasons 5:24
rebate 27:24
28:1,2
rebates 28:5
receive 9:10
received 15:7
record 31:25
33:6 34:4
recover 30:9
reduced 27:24
refused 12:24
regardless
26:22
region 3:13
registered
11:18
registration
13:11 15:2,14
15:24
related 6:13
15:23 17:12,16
17:22,25 28:24
relating 15:13
16:14 24:17
relationship
16:4,13 24:10
27:2,9 28:12

28:15 29:6
relationships
23:16,21
remuneration
29:12
report 8:11
13:7
reported 13:11
represented
12:9
representing
5:15 18:20
request 7:9 8:2
19:3,22
requested 8:14
require 29:11
requirement
11:12
respect 9:20,24
14:15,16 19:3
20:1 21:20
25:13 26:20
31:20,21
respond 14:3
response 19:21
21:16
result 27:9
resulted 10:14
retained 9:12
revenue 9:10
9:12 23:8
revenues 15:15
16:8,8,19 23:1
24:10,17 28:4
29:8
right 5:21 8:4
8:11,13,16

9:10,19,19,20
10:18 13:21
14:5 15:20
17:9,9 19:6
20:14,22 21:12
21:13,15,24
22:3,10 24:22
25:1,2,14,15
26:6,7,8,10
28:8,13 29:20
30:4,7
rita 2:25 34:3,8
road 34:21
robinhood
17:20,22
robinwood
17:20
rohrback 4:9
5:18
ron 4:18
rule 6:11 21:12
30:22
rulings 33:3

**s**

s 3:1,17 5:1
satisfy 11:12
sausage 28:7
savvy 27:25
saw 10:16
30:20
saying 12:17
says 9:10
schedule 13:7
19:11
schedules 25:8
31:12

scheduling
11:13
schwartzberg
4:1
scope 30:15
scott 3:8 5:5
7:5 15:6
se 27:4
second 6:19,20
secret 22:22
secreting 14:12
securities 9:14
see 7:12 10:9
14:6 18:11
20:7 22:8 28:7
31:17
seek 21:24
seeking 9:20
11:2,22 26:18
seeks 6:4,11
seen 15:7
send 23:19
29:6
sending 24:7,8
sensitive 20:7
sent 18:11
served 17:2,6
service 6:2 9:9
16:23,23
services 14:25
15:16
severally 10:25
share 9:10
sharing 18:1,6
18:16
show 16:11

showing 25:3
shown 19:24
shows 13:18
shut 14:25
  19:12 22:5
  28:16
signature 34:6
simple 30:7
simply 9:11
sister 6:8 14:22
sitting 16:6,9
  18:18,20
situation 26:25
  27:6
skip 15:20
smoke 4:17
  18:17,17,22,24
  19:5
sole 6:17 8:18
solely 10:23
solutions 34:20
somebody 7:4
  11:2 23:10
  28:24 31:5
sorry 17:6 25:5
sort 29:7
sounds 19:15
  19:16
space 9:8
spadafora 4:1
speak 13:24
  27:8
specialized
  9:13
specific 21:20
staff 16:23
  17:1

stale 18:9
state 13:22,22
  13:23 14:1,2,3
  20:16
statements
  10:22 17:17,23
states 1:1,11
  3:12,14 5:9
  6:16 8:17 9:5
  9:16 11:24
  12:2 13:10
  19:18
status 6:25
stay 5:23 14:2
stayed 13:22
steps 17:19
stock 6:19 8:20
  9:14
stole 26:2
street 3:5 4:3
stricken 7:2
stuff 27:11
stuff's 29:8
subpoena
  21:19 22:12
  27:21
subpoenas
  9:23
subterfuge
  22:6,9
successful 6:17
  8:17
suggesting
  30:2
suite 4:3,11
  34:22

summer 20:18
support 20:20
sure 7:2 8:1
  13:18 18:9
  24:4
surrounding
  12:22
suspend 19:14
suspicious
  11:21
sussman 3:17
  5:8,9,10 6:22
  6:23 7:17,23
  7:25

**t**

t 2:2 3:24 34:1
  34:1
take 5:22 20:4
  31:3
talk 19:20
talking 25:11
  25:11,12,16,17
  27:12
td 17:9,11,11
team 9:6
tell 18:2 31:1
telling 29:4
tens 8:23
terminated
  13:12
terms 31:12
testified 16:5
  28:15
testify 20:5
testifying
  21:17

testimony 20:3
  20:4,4
thank 13:20
  21:6 25:20
  27:15 31:10,23
  32:1
thanks 10:17
thea 2:2 3:20
  5:12,25
theory 28:8,9
  30:10
thing 20:6 29:7
things 5:21
  21:16
think 8:2 13:8
  21:4,22 25:18
  26:3 28:23
thinks 16:20
third 3:21 4:2
  12:9 25:9
three 7:1 8:7
time 5:21 7:12
  7:14 9:17 26:5
  27:18
timely 6:2
times 20:18
today 6:24 7:1
  7:10 10:16
together 21:14
tortious 12:16
total 31:11,12
trade 25:4 27:3
  27:5,5
traded 9:14
traders 23:24
trades 27:3

**trading** 6:9,9
6:18 8:19 9:7
10:25 11:1,8,9
11:20,25 12:3
12:25 13:21
14:3,17,23,25
15:3,11,13,17
15:22,24 18:1
19:10,12 22:13
22:14 23:2,11
23:15,16,19,21
23:25 24:1,2,6
24:8,8,10,19
25:23 26:21
27:2,12 28:10
**trading's** 12:11
12:13,23 19:11
25:12,17
**transcribed**
2:25
**transcript** 34:4
**transfer** 11:25
19:19
**transferred** 9:4
18:12
**transfers** 22:13
**transition**
12:22
**true** 19:10 34:4
**trustee** 3:10,11
3:12 5:9 7:13
8:8,10 13:13
**trustee's** 8:7
**try** 8:5 27:21
**trying** 22:9,10
**typical** 27:1

**typically** 22:24

**u**

**u.s.** 1:23 3:10
3:11 7:13 8:7,8
8:10 13:13
**ulterior** 22:1
**ultimate** 30:8
**um** 6:23
**under** 30:22
**undercut** 20:12
**understand**
26:1 27:17
**understanding**
26:12
**undisclosed**
30:11,12
**unique** 16:4
**united** 1:1,11
3:12,14 5:9
**unknown** 1:25
**unlimited**
18:14
**upload** 31:25
**use** 9:8 20:11
22:6,24 27:4,5
**using** 12:12
24:2
**usual** 12:11
**usually** 5:21
23:14

**v**

**vacate** 13:1
**vacuum** 31:4,5
**value** 18:7
**various** 29:3

**venue** 31:6
**verified** 10:18
**veritext** 34:20
**version** 27:21
**violations**
11:14 19:12
**voluntarily**
19:9 28:21
29:17
**voluntary** 9:16
15:13,23

**w**

**wait** 18:19
20:12
**wallstreet** 6:17
8:18
**walnut** 4:3
**want** 7:11
16:22 17:19
20:6 23:4,7
25:7 27:4,5
28:3,7 29:9
30:4 31:16
**wanted** 7:16
**way** 12:17 14:4
14:7 20:4
21:18 23:14
26:15 27:23
28:23 29:13,16
**we've** 9:23
**weltsch** 2:25
34:3,8
**wenarsky** 3:3
**went** 10:13
23:11 28:17,18
29:23

**west** 3:5
**whatsoever**
20:20
**wife** 14:18,21
**winget** 4:1
**wish** 21:6
**witness** 5:15
6:11
**work** 12:12
13:5 16:11
20:10 23:23
24:7,8,17
25:13 26:4
27:21 30:5
**working** 13:19
16:19 25:18
**works** 20:9
21:18 23:14
24:22 27:23
**workspace**
12:13
**worry** 26:9
29:5

**x**

**x** 1:4,10 33:1

**y**

**yeah** 7:7 10:7
17:5,6 22:1
23:9 25:25
27:11,11 29:22
30:21
**year** 23:3
28:19
**yesterday** 7:11
**york** 1:2 3:15
3:22 6:19 8:19

| 9:14 |
| :---: |
| **z** |

**zero**   28:18