UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
*In re:*                                                                                  Chapter 7

                                                                     Case No.: 23-42634 (NHL)

PETER JULIAN DEPAOLA,

                              Debtor.
------------------------------------------------------------X

## AFFIRMATION IN OPPOSITION TO TRUSTEE'S MOTION TO SELL PROPERTY OF THE ESTATE TO DEBTOR

Ronald D. Weiss, an attorney duly sworn to practice before this Court affirms as follows:

1.     My office represents Sunrise Holdings Trust (the "Winning Bidder"), the assignee of the winning bid in the amount of $3,230,000.00 at the auction of 7921 Narrows Avenue, Brooklyn, New York (the "Property") that closed on June 11, 2025. This Affirmation is being filed in Opposition to the Trustee's Motion to sell the Estate's interest in the Property to Peter Julian Depaola (the "Debtor") for the sum of $1,400,000.00 (the "Motion").

## BACKGROUND

2.     The Winning Bidder discovered the Property was being auctioned by Maltz Auctions (the "Auctioneer") through the various advertising materials that were published prior to the auction.

3.     The Winning Bidder reviewed the terms and conditions of the auction prior to participating in the auction. A copy of the terms and conditions is annexed hereto as Exhibit A (the "Terms and Conditions").

4.     The Terms and Conditions provide that "the sale of the Property is subject to such higher and better offers in accordance with these Sale Terms." The Terms and Conditions make no mention of any higher and better offers that could be presented outside of the auction itself.

5.     On June 9, 2025 the Winning Bidder made the required $250,000.00 qualifying

deposit to the Chapter 7 Trustee pursuant to the Terms and Conditions.

6. At the end of the auction, the Winning Bidder had the highest bid at $3,230,000.00. In addition, pursuant to the Terms and Conditions, the Winning Bidder was required to include an additional $161,500.00 buyer's premium, which together with a deposit totaling 10% of the purchase price was due within 48 hours of the auction's conclusion.

7. A Memorandum of Sale-Highest Bidder form was filled out, executed and provided to the Trustee and/or his agent on or about June 11, 2025.

8. On June12, 2025 the Winning Bidder made an additional payment to the Chapter 7 Trustee of $234,500. This brought the total amount paid to $484,500.00 representing a 10% down payment of the purchase price ($320,000.00) and the buyer's premium ($161,500.00).

9. Thereafter the Winning Bidder sent multiple emails to the Trustee and Trustee's counsel without response. On July 14, 2025 the Winning Bidder received a copy of the Trustee's motion to approve the settlement with the Debtor.

10. Upon information and belief, the Debtor did not take part in the auction and did not make any bids at the auction, despite being fully aware that it was taking place.

11. The Terms and Conditions also provide that the "Buyer's Premium shall be deemed to have been earned immediately upon the fall of the hammer and is due within 48 hours after the conclusion of the 363 sale." Should the proposed sale be approved, there would be an additional administrative claim in the case reducing the distribution to unsecured creditors by $161,500.00 plus to costs to the estate in bringing the motion to approve the Auctioneer's compensation.

12. The Winning Bidder is ready to close within two weeks' notice. The Winning Bidder ordered a preliminary title report after winning the auction and would need a final report and would then be able to close with no financing.

# ARGUMENT

13. The Winning Bidder's position is that it made the highest and best offer at the auction and instead of being treated as such, she has essentially been used as a stalking horse bidder to procure a higher bid from the Debtor after the closing of the auction. Such action reduces the public's confidence in any public auction that takes place under Bankruptcy Court jurisdiction.

14. "While the Court certainly appreciates the need to maximize payment of claims, the Court must also always keep one eye cocked on promoting and preserving the integrity of the judicial process. Reneging on clearly established and properly conducted procedures in order to generate some additional dollars for the estate undermines the integrity of the judicial process; indeed, it can undermine the integrity and reputations of the individual litigants and lawyers. The public in general, and all participants at auctions in particular, need to have confidence in the judicial system. A court order reopening the auction process when procedures were clearly established, when the auction was conducted without fraud or collusion and in compliance with the procedures, and when an adequate bid was accepted, will undercut such confidence and faith in the system. This, the Court will not allow, even if reopening the auction would generate more proceeds for the estate." In re Palmer, unpublished, Case No. 12-12211(SMB) (Bankr. S.D.N.Y. December 22, 2016) quoting In re Bigler, LP, 443 B.R. 101, 115 (Bankr. S.D. Tex. 2010), accord In re Gil-Bern Indus, Inc., 526 F.2d 627, 628 (1st Cir. 1975).

15. In the instant matter the Trustee went behind the Highest Bidder's back and made a deal with a person who, upon information and belief, did not even bother to register to bid at the auction. Then after bidding ended and the Winning Bidder had taken all steps necessary to insure their position as the winning bidder under the Terms and Conditions, the Trustee makes a deal

with the Debtor for a higher offer.

16. The Motion fails to take into consideration the auctioneer's claim for the Buyer's Premium that is due and owing pursuant to the Terms and Conditions. This results in a reduction in the balance that the estate would receive as a result of the proposed deal with the Debtor from $1.4 million to $1,238.500.00.

17. The Motion alleges that the stipulation with the Debtor's wife provides for a split of utilities owed in the amount of $25,000.00. The stipulation at Docket No. 129-3 does not show any agreement concerning utilities. Accordingly, the utilities, a post-petition debt, should not be paid by the bankruptcy estate. This amount taken as an expense in the Motion on the Sale Price at public auction, see ¶17 of the Motion. It should not be taken. Additionally, the winning bid was $3,230,000.00 not $3,200,000.00 as alleged in the Motion. After taking this into consideration, the net balance that the estate would receive from the Winning Bidder would be $1,049,252.28.

18. The monetary difference between the two deals totals $189,247.72. The approximate total amount of unsecured claims filed in the case totals over $3.15 million. The difference between both deals in the payout to unsecured creditors is approximately 6%. When measuring this minimal difference in distribution against the public interest in having public auctions with finality, allowing the sale to the Debtor to go forward would be "penny wise and pound foolish." See In re Gil-Bern Industries, Inc., 526 F.2d 627, 629 (1st Cir. 1975).

19. Additionally, the Debtor's ability to close on the proposed deal is questionable at best. While he has now made deposits totaling $280,000.00, it can be seen from the Addendum to the Motion filed at Docket No. 163-1 that the Debtor is unable to perform under the terms set forth in the stipulation filed with the Motion. It appears that the Debtor, unlike the Winning Bidder, is dependent upon financing or some other third-party source to pay the amount due.

20. Given the uncertainty of the Debtor's ability to close, the minimal improvement in the distribution provided for in the deal with the Debtor and the Trustee's failure to negotiate with the Winning Bidder or even inform the Winning Bidder of the Debtor's offer prior to making the Motion, it is clear that the Court should not grant this Motion and should enforce the Terms and Conditions of the auction sale so that the Winning Bidder can move forward on the transaction in the manner contemplated by the Court when it granted the Trustee's motion to sell the Property by Auction on March 28, 2025 at Docket No. 138.

WHEREFORE, it is respectfully requested that the Court deny the Motion and grant such other and further relief as it deems just, proper and appropriate.

Dated: Melville, New York
July 24, 2025

Ronald D. Weiss, P.C.
Attorney for Sunrise Holding Trust

*/s/Ronald D. Weiss, Esq.*
Ronald D. Weiss, Esq.
445 Broadhollow Road, Ste CL-10
Melville, NY 11747
Ph: 631-271-3737
weiss@ny-bankruptcy.com